# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT AGREEMENT

On Time and as Agreed.

Exclusively prepared for
Samantha Baldino





EXHIBIT

A-1



## Employment Agreement for Samantha Baldino

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of 01/20/2020 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

**NOTICE INFORMATION:**

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX  77064 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |
| | |
| **Employee:** | Samantha Baldino |
| Address: | 91 5th Avenue, Unit #9, Shalimar, FL 32579 |
| Telephone Number: | (850) 855-8144 |
| Email: | sammbaldino@gmail.com |

**RECITALS:**

A.  Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B.  Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

**SECTION 1:  TERMS OF EMPLOYMENT.**

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01:    Title, Duties and Responsibilities.** Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

**Employee Initials:**

**Section 1.02:    Employee's Representations Regarding Employment with Company**.

**Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

A.  Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

B.  Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

C.  Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

D.  Employee is not resigning his/her current employment or relocating a residence in reliance on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

**Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

A.  That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

B.  That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

C.  That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

D.  That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

**Section 1.02.3: No Exclusive Territory**. Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

**Section 1.02.4**: **Background Checks**. Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:** **Employee Handbook and Company Policies**.

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook"). In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE:

<u>"Loan Application"</u> is defined as having obtained (verbally or in writing), the following information:
1) Applicant Name(s),
2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
3) Actual property address (i.e., not "TBD" or "To Be Determined"),
4) Estimated/Stated Loan Amount,
5) Estimated/Stated Monthly Income, and
6) Estimated/Stated Property Value

<u>"Loan Originator"</u> means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

<u>"Taking an Application"</u>, as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes <u>"assisting"</u> a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
- Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
- Collecting information on behalf of the prospective borrower; and
- Preparing loan packages.

The duties identified as <u>"administrative or clerical tasks"</u>, per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

**Employee Initials:**

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A. The Fair Housing Act makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B. The Equal Credit Opportunity Act prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

Employee Initials: ___

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

   1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

   2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company. The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified. Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association,

Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements"). Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04: Meetings and Training**. Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within Addendum #2, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month. Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01: Conflict of Interest**. "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction. Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1: Examples of Conflict of Interest.** Accordingly, by way of example and example only, employment or contractor relationships, or Employee actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction, or a familial relationship with any party to either transaction, including, but not limited to borrower(s), seller(s), or real estate agency or agents;

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction.  This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval.   In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02:   Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over,  or  have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section 3.03:   Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1: No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

A. Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

B. Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

C. Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies.  In the event Employee is unsure as to whom should receive the payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

Employee Initials: ___

## SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01:  Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02:  Survival of Terms and Notice Following Termination**. All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company.  Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

## SECTION 5: GENERAL PROVISIONS.

**Section 5.01:  Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of  written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02:  Entire Agreement**. Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement.  Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer.  Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03:  Severability**. In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04:  Certain Usage and Terminology**. In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof' and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the

Employee Initials: _____

words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

**Section 5.05: No Strict Construction**. Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

**Section 5.06: Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

**Section 5.07: No Third-Party Beneficiaries**. This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

**Section 5.08: Assignment.** Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

**Section 5.09: Adequate Review.** Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and agrees that the provisions set forth are reasonable.  Company has also encouraged Employee, prior to signing, to freely discuss the terms, the meaning and effect of the provisions of this Agreement with others, including a lawyer of Employee's choosing.

## SECTION 6: LAW GOVERNING AGREEMENT AND VENUE.

**Section 6.01: Applicable Law and Venue.** This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts. Notwithstanding the foregoing, a final judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

**Section 6.03: Attorney's Fees and Costs.** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

Employee Initials:

**EMPLOYEE**

Jan 13, 2020

Date

Employee Signature

Samantha Baldino

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Jan 15, 2020

Date

By

Michelle Jabbour

Name

Human Resources Manager

Title

Employee Initials:



## EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

### BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

### CONFIDENTIAL INFORMATION

#### A.  *Confidential Information Defined*

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company.  "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.  Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company:  the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee compensation and performance data and other confidential personnel information;

payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

## B.   *Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that  unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

## C.   *Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors.  Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.  Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company.  Employee agrees to treat this information in the same manner as Confidential Information of the Company.

## D.   *Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company.  Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information.  If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or other terms and conditions of employment will not be treated as or considered Confidential Information when

used for purposes protected by the National Labor Relations Act ("NLRA").  Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information.  Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access.  Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses.  Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists.  Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction.  Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company.  If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal. Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement.  Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department.  If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form.  The

return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.  This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit,  or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the  records contained within the Company's mortgage Loan Origination System ("LOS"), which records are accessible by Employee.  Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction.  Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the

termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting.   The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company.   A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company.   This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law.   Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting of a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7.   The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach.   If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year.   The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will.  Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision.  Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law.  If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement.  Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives.  It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee.  The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement.  The Company's affiliates are intended third-party beneficiaries of this Agreement.  Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original.  Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written.  The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters.  This Agreement may be modified or amended only by an agreement in writing signed by both parties.  Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency.   This may include a disclosure of trade secret information provided that it complies with  the Defend Trade Secrets Act of 2016 (DTSA).  The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order.  The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

**BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.**

[SIGNATURE PAGE FOLLOWS]

Jan 13, 2020
_____

Date

Samantha Baldino (Jan 13, 2020)
_____

Employee Signature

Samantha Baldino
_____

Printed Name


**INTERLINC MORTGAGE SERVICES, LLC**


Jan 15, 2020
_____

Date

*Michelle Jabbour*
Michelle Jabbour (Jan 15, 2020)
_____

By

Michelle Jabbour
_____

Name

Human Resources Manager
_____

Title



## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**.  The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

### CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following:  (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement.  This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction. All determinations of final  relief  will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged

to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064.  I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought.  The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party.  Each party also shall have the right to make requests for production of documents to any party.  Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator").  And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case.  Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without authority to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

**I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.**

| Jan 13, 2020 | *Samantha baldino (Jan 13, 2020)* |
|---|---|
| Date | Employee Signature |
|  | Samantha Baldino |
|  | Printed Name |

**INTERLINC MORTGAGE SERVICES, LLC**

| Jan 15, 2020 | *Michelle Jabbour (Jan 15, 2020)* |
|---|---|
| Date | By |
|  | Michelle Jabbour |
|  | Name |
|  | Human Resources Manager |
|  | Title |

# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT AGREEMENT

On Time and as Agreed.

Exclusively prepared for
Laura Chilcott





## Employment Agreement for Laura Chilcott

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of 08/17/2020 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

**NOTICE INFORMATION:**

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 5875 N. Sam Houston Pkwy. W., Ste. 300, Houston, TX  77086 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |
| | |
| **Employee:** | Laura Chilcott |
| Address: | 21 E Casa Loma Drive, Mary Esther, FL 32569 |
| Telephone Number: | (307) 870-2385 |
| Email: | lchilcot@gmail.com |

**RECITALS:**

A.  Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B.  Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

**SECTION 1:  TERMS OF EMPLOYMENT.**

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01:    Title, Duties and Responsibilities.**  Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

Employee Initials: _LC_

**Section 1.02:**    **Employee's Representations Regarding Employment with Company**.

**Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

A. Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

B. Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

C. Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

D. Employee is not resigning his/her current employment or relocating a residence in reliance on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

**Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

A. That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

B. That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

C. That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

D. That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

**Section 1.02.3: No Exclusive Territory**. Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

**Section 1.02.4**: **Background Checks**. Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:** **Employee Handbook and Company Policies**.

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook").  In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE:

"Loan Application" is defined as having obtained (verbally or in writing), the following information:
1) Applicant Name(s),
2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
3) Actual property address (i.e., not "TBD" or "To Be Determined"),
4) Estimated/Stated Loan Amount,
5) Estimated/Stated Monthly Income, and
6) Estimated/Stated Property Value

"Loan Originator" means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

"Taking an Application", as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes "assisting" a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
- Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
- Collecting information on behalf of the prospective borrower; and
- Preparing loan packages.

The duties identified as "administrative or clerical tasks", per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A. The Fair Housing Act makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B. The Equal Credit Opportunity Act prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

Employee Initials: _____

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company.  The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified.  Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association,

Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements"). Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04: Meetings and Training**. Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within <u>Addendum #2</u>, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month. Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01: Conflict of Interest**. "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction. Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1: Examples of Conflict of Interest.** Accordingly, by way of example and example only, employment or contractor relationships, or Employee actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction, or a familial relationship with any party to either transaction, including, but not limited to borrower(s), seller(s), or real estate agency or agents;

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

**Employee Initials:** 

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction.  This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval.   In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02:   Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over, or  have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section 3.03:    Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1:  No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

    A.  Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

    B.  Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

    C.  Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies.  In the event Employee is unsure as to whom should receive the payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

## SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01:   Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02:   Survival of Terms and Notice Following Termination.** All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company.  Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

## SECTION 5: GENERAL PROVISIONS.

**Section 5.01:   Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of  written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02:   Entire Agreement**. Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement.  Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer.  Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03:   Severability**. In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04:   Certain Usage and Terminology**. In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the

words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

**Section 5.05:  No Strict Construction**. Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

**Section 5.06:  Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

**Section 5.07:  No Third-Party Beneficiaries**. This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

**Section 5.08:  Assignment.** Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

**Section 5.09:  Adequate Review.**  Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and agrees that the provisions set forth are reasonable.  Company has also encouraged Employee, prior to signing, to freely discuss the terms, the meaning and effect of the provisions of this Agreement with others, including a lawyer of Employee's choosing.

## SECTION 6: LAW GOVERNING AGREEMENT AND VENUE.

**Section 6.01:  Applicable Law and Venue.** This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts. Notwithstanding the foregoing, a final judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

**Section 6.03:  Attorney's Fees and Costs.** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**Employee Initials:**

**EMPLOYEE**

Aug 15, 2020

*Laura Chilcott*
Laura Chilcott (Aug 15, 2020 19:40 CDT)

Date                          Employee Signature

Laura Chilcott

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Aug 17, 2020

*Michelle Jabbour*
Michelle Jabbour (Aug 17, 2020 11:22 CDT)

Date                          By

Michelle Jabbour

Name

Human Resources Manager

Title

Employee Initials:   *LC*



## EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

### BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

### CONFIDENTIAL INFORMATION

#### A.  *Confidential Information Defined*

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company.  "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.  Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company:  the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee compensation and performance data and other confidential personnel information;

payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

### B.   *Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that  unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

### C.   *Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors.  Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.  Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company.  Employee agrees to treat this information in the same manner as Confidential Information of the Company.

### D.   *Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company.  Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information.  If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or other terms and conditions of employment will not be treated as or considered Confidential Information when

used for purposes protected by the National Labor Relations Act ("NLRA").  Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information.  Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access.  Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses.  Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists.  Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction.  Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company.  If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal.  Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement.  Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department.  If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form.  The

return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.  This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit,  or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the  records contained within the Company's mortgage Loan Origination System ("LOS"), which records are accessible by Employee.  Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction.  Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the

termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting.   The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company.  A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company.  This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law.  Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting of a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7.  The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach.  If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year.  The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will.  Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision.  Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law.  If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement.  Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives.  It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee.  The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement.  The Company's affiliates are intended third-party beneficiaries of this Agreement.  Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original.  Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written.  The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters.  This Agreement may be modified or amended only by an agreement in writing signed by both parties.  Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency.   This may include a disclosure of trade secret information provided that it complies with  the Defend Trade Secrets Act of 2016 (DTSA).  The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the  Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order.  The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

**BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.**

[SIGNATURE PAGE FOLLOWS]

Aug 15, 2020

_Laura Chilcott_
Laura Chilcott (Aug 15, 2020 19:40 CDT)

Date

Employee Signature

Laura Chilcott

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Aug 17, 2020

_Michelle Jabbour_
Michelle Jabbour (Aug 17, 2020 11:22 CDT)

Date

By

Michelle Jabbour

Name

Human Resources Manager

Title



# MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**. The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

## CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following:  (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement.  This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction. All determinations of final  relief  will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged

to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064.  I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought.  The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party.  Each party also shall have the right to make requests for production of documents to any party.  Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator").  And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case.  Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted.  The Arbitrator is without authority to apply any different substantive law or law of remedies.  The Federal Rules of Evidence shall apply.  The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable.  Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later.  The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc.  Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any.  However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.  All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

**I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.**


Aug 15, 2020
_____
Date

*Laura Chilcott*
Laura Chilcott (Aug 15, 2020 19:40 CDT)
_____
Employee Signature

Laura Chilcott
_____
Printed Name


**INTERLINC MORTGAGE SERVICES, LLC**


Aug 17, 2020
_____
Date

*Michelle Jabbour*
Michelle Jabbour (Aug 17, 2020 11:22 CDT)
_____
By

Michelle Jabbour
_____
Name

Human Resources Manager
_____
Title

# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT AGREEMENT

On Time and as Agreed.

Exclusively prepared for
Kelsey Douglas





## Employment Agreement for Kelsey Douglas

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of May 6, 2019 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

**NOTICE INFORMATION:**

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |
| | |
| **Employee:** | Kelsey Douglas |
| Address: | 731 Sunset Blvd. East, Fort Walton Beach, FL 32547 |
| Telephone Number: | (850) 621-5151 |
| Email: | kld44@students.uwf.edu |

**RECITALS:**

A. Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B. Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

## SECTION 1: TERMS OF EMPLOYMENT.

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01: Title, Duties and Responsibilities.** Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

Employee Initials 

**Section 1.02:** **Employee's Representations Regarding Employment with Company**.

**Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

A. Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

B. Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

C. Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

D. Employee is not resigning his/her current employment or relocating a residence in reliance on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

**Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

A. That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

B. That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

C. That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

D. That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

**Section 1.02.3: No Exclusive Territory**. Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

Employee Initials 

**Section 1.02.4**: **Background Checks**. Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:** **Employee Handbook and Company Policies**.

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook"). In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE:

"Loan Application" is defined as having obtained (verbally or in writing), the following information:
1) Applicant Name(s),
2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
3) Actual property address (i.e., not "TBD" or "To Be Determined"),
4) Estimated/Stated Loan Amount,
5) Estimated/Stated Monthly Income, and
6) Estimated/Stated Property Value

"Loan Originator" means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

"Taking an Application", as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes "assisting" a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
- Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
- Collecting information on behalf of the prospective borrower; and
- Preparing loan packages.

The duties identified as "administrative or clerical tasks", per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

Employee Initials 

DocuSign Envelope ID: 75A05E49-8983-49A6-9417-438EF46C8767

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A. The Fair Housing Act makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B. The Equal Credit Opportunity Act prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

Employee Initials 

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company. The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified. Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage

Employee Initials 

Corporation, Federal National Mortgage Association, Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements"). Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04: Meetings and Training**. Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within <u>Addendum #2</u>, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month. Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01: Conflict of Interest**. "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction. Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1: Examples of Conflict of Interest.** Accordingly, by way of example and example only, employment or contractor relationships, or Employee actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction, or a familial relationship with any party to either transaction, including, but not limited to borrower(s), seller(s), or real estate agency or agents;

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

Employee Initials 

DocuSign Envelope ID: 75A05E24-8988-49A0-9417-438EE46C8767

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction. This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval. In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02: Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over, or have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section 3.03: Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1: No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

A. Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

B. Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

C. Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies. In the event Employee is unsure as to whom should receive the

Employee Initials 

DocuSign Envelope ID: 75A05D48-8983-49A6-9417-438EF46C8767

payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

## SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01: Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02: Survival of Terms and Notice Following Termination**. All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company. Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

## SECTION 5: GENERAL PROVISIONS.

**Section 5.01: Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02: Entire Agreement.** Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement. Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer. Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03: Severability.** In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of

Employee Initials 

DocuSign Envelope ID: 75A0E548-8038-49A0-9417-438EF46C8767

the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04:   Certain Usage and Terminology**. In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof' and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

**Section 5.05:   No Strict Construction**. Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

**Section 5.06:   Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

**Section 5.07:   No Third-Party Beneficiaries**. This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

**Section 5.08:   Assignment.** Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

**Section 5.09:   Adequate Review.**  Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and agrees that the provisions set forth are reasonable.  Company has also encouraged Employee, prior to signing, to freely discuss the terms, the meaning and effect of the provisions of this Agreement with others, including a lawyer of Employee's choosing.

**SECTION 6: LAW GOVERNING AGREEMENT AND VENUE.**

**Section 6.01:   Applicable Law and Venue.** This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts.

Employee Initials 

DocuSign Envelope ID: 75A05D48-89B9-49A9-9417-438EF46C8767

Notwithstanding the foregoing, a final judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

      **Section 6.03: Attorney's Fees and Costs.** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**EMPLOYEE**

4/23/2019 | 6:37 PM

Date

*[DocuSigned by: Kelsey Douglas — 914C4EFDE5E1467...]*

Employee Signature

Kelsey Douglas

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

4/24/2019 | 2:54 PM

Date

*[DocuSigned by: Susie Smith — EDA2514A8A354F3...]*

By

Susie Smith

Name

Vice President, Human Resources

Title

Employee Initials

DocuSign Envelope ID: 75A05D48-8988-49A6-9417-438EF46C8767



# EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

## BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

## CONFIDENTIAL INFORMATION

### A. *Confidential Information Defined*

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company. "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it. Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company: the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee

compensation and performance data and other confidential personnel information; payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

*B. Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

*C. Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors. Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position. Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company. Employee agrees to treat this information in the same manner as Confidential Information of the Company.

*D. Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company. Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information. If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or

other terms and conditions of employment will not be treated as or considered Confidential Information when used for purposes protected by the National Labor Relations Act ("NLRA"). Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information. Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access. Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses. Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists. Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction. Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company. If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal. Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement. Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department. If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and

electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form. The return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the

DocuSign Envelope ID: 75A05D48-8983-49AC-9417-438EF46C8767

Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee. This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the records contained within the Company's mortgage Loan Origination System

("LOS"), which records are accessible by Employee. Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction. Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting. The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company. A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company. This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law. Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7. The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach. If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will. Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision. Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law. If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

DocuSign Envelope ID: 75A05D48-8988-49A6-9417-438EE46C8767

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement. Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives. It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee. The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement. The Company's affiliates are intended third-party beneficiaries of this Agreement. Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original. Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written. The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

DocuSign Envelope ID: 75A05D48-8983-49A6-9417-438EF46C8767

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters. This Agreement may be modified or amended only by an agreement in writing signed by both parties. Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency. This may include a disclosure of trade secret information provided that it complies with the Defend Trade Secrets Act of 2016 (DTSA). The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order. The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

**BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.**

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: 75A0ED48-8933-49AC-9417-438EF46C8767

4/23/2019 | 6:37 PM

Date

Employee Signature

Kelsey Douglas

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

4/24/2019 | 2:54 PM

Date

By

Susie Smith

Name

Vice President, Human Resources

Title

DocuSign Envelope ID: 75A05D48-8983-49A9-9417-438EF46C8767



# MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me," or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**. The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

## CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following: (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

DocuSign Envelope ID: 75A05D48-8988-49A6-9417-438EF46C8767

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement. This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction. All determinations of final relief will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the

DocuSign Envelope ID: 75A05D48-89B8-49A6-9417-438EF46C87677

claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator"). And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case. Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

DocuSign Envelope ID: 75A0FB48-8988-49A0-9417-438EF46C8767

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without authority to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

**I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.**



4/23/2019 | 6:37 PM CDT

Date

Employee Signature

Kelsey Douglas

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**



4/24/2019 | 2:54 PM

Date

By

Susie Smith

Name

Vice President, Human Resources

Title

# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT AGREEMENT

On Time and as Agreed.

Exclusively prepared for
Bridget Morris





## Employment Agreement for Bridget Morris

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of 12/14/2020 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

NOTICE INFORMATION:

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 5875 N. Sam Houston Pkwy. W., Ste. 300, Houston, TX  77086 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |
| | |
| **Employee:** | Bridget Morris |
| Address: | 208 South Street NE, Ft. Walton Beach, FL 32547 |
| Telephone Number: | (850) 533-4090 |
| Email: | Bridget.l.morris72@gmail.com |

RECITALS:

A. Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B. Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

### SECTION 1: TERMS OF EMPLOYMENT.

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01:    Title, Duties and Responsibilities.** Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

Employee Initials: _____

**Section 1.02:**    **Employee's Representations Regarding Employment with Company**.

**Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

A. Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

B. Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

C. Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

D. Employee is not resigning his/her current employment or relocating a residence on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

**Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

A. That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

B. That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

C. That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

D. That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

**Section 1.02.3: No Exclusive Territory**. Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

Employee Initials:

**Section 1.02.4: Background Checks.** Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:     Employee Handbook and Company Policies.**

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook"). In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE:

> "Loan Application" is defined as having obtained (verbally or in writing), the following information:
> 1) Applicant Name(s),
> 2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
> 3) Actual property address (i.e., not "TBD" or "To Be Determined"),
> 4) Estimated/Stated Loan Amount,
> 5) Estimated/Stated Monthly Income, and
> 6) Estimated/Stated Property Value

> "Loan Originator" means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

> "Taking an Application", as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes "assisting" a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
> - Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
> - Collecting information on behalf of the prospective borrower; and
> - Preparing loan packages.

> The duties identified as "administrative or clerical tasks", per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

Employee Initials:   _Bri_

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A. The Fair Housing Act makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B. The Equal Credit Opportunity Act prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

**Employee Initials:** _BM_

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company. The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified. Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association,

**Employee Initials:** _RM_

Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements"). Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04: Meetings and Training.** Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within Addendum #2, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month. Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01: Conflict of Interest.** "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction. Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1: Examples of Conflict of Interest.** Accordingly, by way of example and example only, employment or contractor relationships, or Employee actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a mortgage loan transaction in such that Employee is the Loan Originator of record on a loan transaction in which Employee, or Employee's spouse, is a borrower or seller of the property.

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

**Employee Initials:** _RM_

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction. This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval. In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02:   Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over, or  have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section 3.03:    Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1: No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

A. Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

B. Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

C. Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies. In the event Employee is unsure as to whom should receive the payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

Employee Initials: _____

SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01: Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02: Survival of Terms and Notice Following Termination.** All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company. Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

SECTION 5: GENERAL PROVISIONS

**Section 5.01: Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02: Entire Agreement.** Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement. Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer. Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03: Severability.** In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04: Certain Usage and Terminology.** In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof' and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the

Employee Initials:    _EM_

words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

**Section 5.05:  No Strict Construction.** Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

**Section 5.06:  Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

**Section 5.07:  No Third-Party Beneficiaries.** This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

**Section 5.08:  Assignment.** Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

**Section 5.09:  Adequate Review.**  Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and **agrees that the provisions set forth are reasonable.**  Company has also encouraged Employee, prior to signing, to freely discuss the terms, **the meaning and effect of the provisions** of this Agreement with others, including a lawyer of Employee's choosing.

## SECTION 6: LAW GOVERNING AGREEMENT AND VENUE

**Section 6.01:  Applicable Law and Venue.** This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts. Notwithstanding the foregoing, a final Judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

**Section 6.03:  Attorney's Fees and Costs.** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**Employee Initials:**

**EMPLOYEE**

Dec 9, 2020

_Bridget Morris_
Bridget Morris (Dec 9, 2020 14:28 CST)

Date

Employee Signature

Bridget Morris

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Dec 11, 2020

_Michelle Jabbour_
Michelle Jabbour (Dec 11, 2020 15:15 CST)

Date

By

Michelle Jabbour

Name

Human Resources Manager

Title

Employee Initials: _BM_



## EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

### BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

### CONFIDENTIAL INFORMATION

#### A.  *Confidential Information Defined*

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company.  "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.  Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company:  the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee compensation and performance data and other confidential personnel information;

payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

### B. *Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that  unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

### C. *Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors.  Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.  Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company.  Employee agrees to treat this information in the same manner as Confidential Information of the Company.

### D. *Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company.  Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information. If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or other terms and conditions of employment will not be treated as or considered Confidential Information when

used for purposes protected by the National Labor Relations Act ("NLRA").  Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information. Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access.  Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses.  Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists.  Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction.  Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company.  If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal. Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement.  Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department.  If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form.  The

return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.  This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit,  or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the  records contained within the Company's mortgage Loan Origination System ("LOS"), which records are accessible by Employee.  Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction.  Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the

termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting.   The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company.  A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company.  This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law.  Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting of a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7.  The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach.  If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year.  The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will.  Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision.  Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law.  If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement.  Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives.  It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee.  The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement.  The Company's affiliates are intended third-party beneficiaries of this Agreement.  Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original.  Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written.  The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters. This Agreement may be modified or amended only by an agreement in writing signed by both parties. Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency. This may include a disclosure of trade secret information provided that it complies with the Defend Trade Secrets Act of 2016 (DTSA). The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order. The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

**BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.**

[SIGNATURE PAGE FOLLOWS]

Dec 9, 2020

Date

*Bridget Morris*
Bridget Morris (Dec 9, 2020 18:28 CST)

Employee Signature

Bridget Morris

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Dec 11, 2020

Date

*Michelle Jabbour*
Michelle Jabbour (Dec 11, 2020 11:19 CST)

By

Michelle Jabbour

Name

Human Resources Manager

Title



# MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**. The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

## CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following:  (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement.  This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction.  All determinations of final  relief will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged

to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator"). And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case. Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without authority to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.  All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.


Dec 9, 2020                          *Bridget Morris*
                                     Bridget Morris (Dec 9, 2020 10:20 CST)
Date                                 Employee Signature

                                     Bridget Morris
                                     Printed Name


### INTERLINC MORTGAGE SERVICES, LLC


Dec 11, 2020                         *Michelle Jabbour*
                                     Michelle Jabbour (Dec 11, 2020 13:15 CST)
Date                                 By

                                     Michelle Jabbour
                                     Name

                                     Human Resources Manager
                                     Title


Page | 5

# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT AGREEMENT

On Time and as Agreed.

Exclusively prepared for
Garret O'Leary





## Employment Agreement for Garret O'Leary

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of 01/04/2021 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

**NOTICE INFORMATION:**

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 5875 N. Sam Houston Pkwy. W., Ste. 300, Houston, TX  77086 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |

| | |
|---|---|
| **Employee:** | Garret O'Leary |
| Address: | 319 Racetrack Road, Unit 1405, Ft. Walton Beach, FL 32547 |
| Telephone Number: | (831) 801-1601 |
| Email: | garretoleary07@gmail.com |

**RECITALS:**

A. Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B. Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

## SECTION 1: TERMS OF EMPLOYMENT.

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01:    Title, Duties and Responsibilities.** Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

**Employee Initials:**

**Section 1.02:**   Employee's Representations Regarding Employment with Company.

      **Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

    A. Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

    B. Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

    C. Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

    D. Employee is not resigning his/her current employment or relocating a residence in reliance on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

      By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

      **Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

    A. That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

    B. That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

    C. That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

    D. That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

      **Section 1.02.3: No Exclusive Territory.** Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

Employee Initials: _____

**Section 1.02.4**: **Background Checks**. Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:**     **Employee Handbook and Company Policies.**

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook"). In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE.

"Loan Application" is defined as having obtained (verbally or in writing), the following information:
1) Applicant Name(s),
2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
3) Actual property address (i.e., not "TBD" or "To Be Determined"),
4) Estimated/Stated Loan Amount,
5) Estimated/Stated Monthly Income, and
6) Estimated/Stated Property Value

"Loan Originator" means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

"Taking an Application", as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes "assisting" a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
- Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
- Collecting information on behalf of the prospective borrower; and
- Preparing loan packages.

The duties identified as "administrative or clerical tasks", per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

**Employee Initials:**

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A.  <u>The Fair Housing Act</u> makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B.  <u>The Equal Credit Opportunity Act</u> prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

**Employee Initials:** _____

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

   1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

   2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company. The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified. Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association,

Employee Initials:

Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements"). Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04: Meetings and Training**. Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within Addendum #2, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month. Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01: Conflict of Interest**. "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction. Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1: Examples of Conflict of Interest.** Accordingly, by way of example and example only, employment or contractor relationships, or Company actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a mortgage loan transaction in such that Employee is the Loan Originator of record on a loan transaction in which Employee, or Employee's spouse, is a borrower or seller of the property.

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

**Employee Initials:**

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction. This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval. In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02: Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over, or have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section 3.03: Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1: No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

A. Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

B. Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

C. Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies. In the event Employee is unsure as to whom should receive the payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

　　　　　　　　Employee Initials: _____

## SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01: Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02:  Survival of Terms and Notice Following Termination.** All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company.  Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

## SECTION 5: GENERAL PROVISIONS.

**Section 5.01:  Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02:  Entire Agreement.** Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement.  Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer.  Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03:  Severability.** In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04:  Certain Usage and Terminology**. In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof' and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the

**Employee Initials:** 

words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

Section 5.05:  No Strict Construction. Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

Section 5.06:  Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

Section 5.07:  No Third-Party Beneficiaries. This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

Section 5.08:  Assignment. Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

Section 5.09:  Adequate Review.  Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and agrees that the provisions set forth are reasonable.  Company has also encouraged Employee, prior to signing, to freely discuss the terms, the meaning and effect of the provisions of this Agreement with others, including a lawyer of Employee's choosing.

SECTION 6. LAW GOVERNING AGREEMENT AND VENUE.

Section 6.01:  Applicable Law and Venue. This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts. Notwithstanding the foregoing, a final judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

Section 6.03:  Attorney's Fees and Costs. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**Employee Initials:** 

**EMPLOYEE**

Dec 24, 2020

*Garret O'Leary*
Garret O'Leary (Dec 24, 2020 11:16 MST)

Date

Employee Signature

Garret O'Leary

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Dec 29, 2020

*Michelle Jabbour*
Michelle Jabbour (Dec 29, 2020 10:31 CST)

Date

By

Michelle Jabbour

Name

Human Resources Manager

Title

Employee Initials:   *GO*



## EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

### BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

### CONFIDENTIAL INFORMATION

#### A.  *Confidential Information Defined*

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company.  "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.  Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company:  the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee compensation and performance data and other confidential personnel information;

payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

### B.  *Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that  unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

### C.  *Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors.  Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.  Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company.  Employee agrees to treat this information in the same manner as Confidential Information of the Company.

### D.  *Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company.  Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information. If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or other terms and conditions of employment will not be treated as or considered Confidential Information when

used for purposes protected by the National Labor Relations Act ("NLRA").  Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information.  Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access.  Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses.  Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists.  Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction.  Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company.  If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal.  Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement.  Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department.  If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form.  The

return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

Page | 4

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.   This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit,  or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the  records contained within the Company's mortgage Loan Origination System ("LOS"), which records are accessible by Employee.  Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction.  Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the

termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting.   The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company.   A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company.   This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law.   Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting of a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7.   The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach.   If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year.   The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will.  Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision.  Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law.  If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement. Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives. It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee. The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement. The Company's affiliates are intended third-party beneficiaries of this Agreement. Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original. Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written. The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters.  This Agreement may be modified or amended only by an agreement in writing signed by both parties.  Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency.   This may include a disclosure of trade secret information provided that it complies with  the Defend Trade Secrets Act of 2016 (DTSA).  The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order.  The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.

[SIGNATURE PAGE FOLLOWS]

Dec 24, 2020

*Garret O'Leary*
Garret O'Leary (Dec 24, 2020 13:22 MST)

Date

Employee Signature

Garret O'Leary

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Dec 29, 2020

*Michelle Jabbour*
Michelle Jabbour (Dec 29, 2020 10:11 CST)

Date

By

Michelle Jabbour

Name

Human Resources Manager

Title



# MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**. The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

## CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following:  (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement.  This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction.  All determinations of final relief will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged

to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator"). And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case. Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without authority to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.  All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

**I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.**

Dec 24, 2020

Date

*Garret O'Leary*
Garret O'Leary (Dec 24, 2020 11:25 MST)

Employee Signature

Garret O'Leary

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Dec 29, 2020

Date

*Michelle Jabbour*
Michelle Jabbour (Dec 29, 2020 09:11 CST)

By

Michelle Jabbour

Name

Human Resources Manager

Title

# INTERLINC MORTGAGE SERVICES, LLC



# EMPLOYMENT

# AGREEMENT

## On Time and as Agreed.

Exclusively prepared for
Kenneth Springfield





## Employment Agreement for Kenneth Springfield

THIS EMPLOYMENT AGREEMENT ("Agreement") is made effective as of 06/01/2020 ("Effective Date"), and is by and between InterLinc Mortgage Services, LLC, a Texas limited liability company ("Company" or "Employer"), and the undersigned employee ("Employee").

**NOTICE INFORMATION:**

| | |
|---|---|
| **Company/Employer:** | InterLinc Mortgage Services, LLC |
| Attention: | Legal Department |
| Address: | 5875 N. Sam Houston Pkwy. W., Ste. 300, Houston, TX  77086 |
| Telephone Number: | 281-367-9595 |
| Email: | Legal@lincloan.com |
| Fax Number: | 281-367-0255 |
| | |
| **Employee:** | Kenneth Springfield |
| Address: | 547 Mooney Road NE, Fort Walton Beach, FL 32547 |
| Telephone Number: | (850) 533-9232 |
| Email: | ksprings223@yahoo.com |

**RECITALS:**

A.  Employer is primarily engaged in the business of originating 1-4 unit single family mortgage loans as either a mortgage broker or lender.

B.  Employee desires to accept employment by the Company upon the terms and conditions hereinafter set forth. Employee previously may have executed various Company employment agreements and addenda which shall, only as more particularly set forth below, be replaced and superseded by this Agreement.

**NOW, THEREFORE,** in consideration of the Recitals and the mutual covenants herein contained, Employer and Employee ("Parties") mutually agree to the following:

**SECTION 1:  TERMS OF EMPLOYMENT.**

Employee shall be subject to the terms of employment as described below, which shall remain in effect until such time as Employee receives notice of new terms of employment.

**Section 1.01:    Title, Duties and Responsibilities.** Employee is hired for the title, position, duties and responsibilities defined in Addendum #1, entitled "Job Description," which is attached hereto and made a part of this Agreement, as well as any other duties or responsibilities that the Company may assign from time to time.

Employee Initials:

**Section 1.02:    Employee's Representations Regarding Employment with Company**.

**Section 1.02.1: No Prior Restraints.** Employee hereby represents and warrants to Employer that:

A.  Employee has full lawful right and power to enter into this Agreement and carry out the duties and responsibilities set forth within <u>Addendum #1</u>, and that same will not constitute a breach of, or default under any employment, confidentiality, non-competition or other agreement by which Employee may be bound;

B.  Employee is under no obligation to any former employer, entity or person, which in any way is inconsistent with Employee's employment by Company in accordance with this Agreement, or which may impose any restrictions or liability on Company or Employee's satisfactory performance of his/her duties and responsibilities for Company;

C.  Employee does not unlawfully possess, nor has unlawfully obtained any proprietary or confidential information from any prior employer and Employee shall not use any confidential or proprietary information of any prior employer during Employee's employment with Company nor will Employee disclose to Company or any of its employees any confidential or proprietary information of any prior employer; and

D.  Employee is not resigning his/her current employment or relocating a residence in reliance on any promise or representation by Employer regarding any guaranteed length of employment or guaranteed compensation.

By executing this Agreement, Employee authorizes Company to share this Agreement with, or make inquiry of, any prior employer to corroborate the representations made by Employee within this section.

**Section 1.02.2: At Will Employment.** By executing this Agreement, Employee further acknowledges and agrees to the following:

A.  That he/she has received no commitment from Employer, or anyone purporting to act on behalf of Employer that Employee shall be employed for any specific time period or duration;

B.  That all employment is "at will" and nothing herein shall be construed to place upon Employer a continuing obligation of employment;

C.  That his/her employment may be terminated, for any reason and with or without notice, at any time, by Employer or upon Employee's own initiative; and

D.  That any changes in Employee's at will status must be in writing and approved by either the Company's Manager and Chief Executive Officer or President and Chief Operating Officer.

**Section 1.02.3: No Exclusive Territory**. Employee acknowledges that he/she shall not have, nor shall Employer grant to Employee any exclusive region or territory.

**Section 1.02.4**: **Background Checks**. Employee acknowledges that Employer shall, prior to and during the course of Employee's employment, conduct criminal, credit and other federal agency background checks to determine eligibility for hire and continued employment ("Background Checks"). Employee will be provided required disclosure and notifications per the Fair Credit Reporting Act (FCRA). Adverse or negative results from Background Checks may lead to termination of employment, or restrictions on Employee's position, duties and responsibilities.

**Section 1.03:** **Employee Handbook and Company Policies**.

**Section 1.03.1: Employee Handbook.** Employee acknowledges receipt of the Company's Employee Handbook, as the same is amended from time to time ("Handbook").  In the event of a conflict between the terms of the Handbook and this Agreement, the terms of this Agreement shall control.

**Section 1.03.2: Loan Origination Policy.** Employee agrees to strictly adhere to and ensure that all loan applications taken by the Company fully comply with the provisions of the Secure and Fair Enforcement ("SAFE") Mortgage Licensing Act as summarized below, and any and all pertinent state or similar Requirements (defined below) including those promulgated in connection with SAFE:

"Loan Application" is defined as having obtained (verbally or in writing), the following information:
1) Applicant Name(s),
2) Applicant's Social Security Number (or Tax Identification Number) for the purpose of obtaining a credit report,
3) Actual property address (i.e., not "TBD" or "To Be Determined"),
4) Estimated/Stated Loan Amount,
5) Estimated/Stated Monthly Income, and
6) Estimated/Stated Property Value

"Loan Originator" means an individual, who for compensation or other monetary gain, or in expectation of compensation or other monetary gain, (i) takes a mortgage application, or (ii) offers or negotiates the terms of a mortgage loan.

"Taking an Application", as found within the Commentary published by the Dept. of Housing and Urban Development ("HUD") and in the Preamble to the Proposed Rules, includes "assisting" a prospective borrower in the completion of a mortgage loan application, which, includes, among other things:
- Responding to the prospective borrower's questions regarding loan terms (e.g., loan products, rates, fees, costs, etc.);
- Collecting information on behalf of the prospective borrower; and
- Preparing loan packages.

The duties identified as "administrative or clerical tasks", per HUD, are limited to "physically handling or transmitting" to a lender a "completed application form" on behalf of a prospective borrower.

**Employee Initials:**

Therefore, both the person who "offers or negotiates residential mortgage loan terms" as well as the person who "takes the application" (in whole or in part) must comply with the licensing requirements of the SAFE Act.

All Company employees involved in the loan origination process (i.e., application, processing, underwriting and closing) must ensure compliance with the provisions of the SAFE Act and all other Requirements, and more particularly that, prior to accepting a Loan Application, they confirm that the Company, the Company's branch office location and the employee designated as the Loan Originator hold the necessary licenses and approvals to originate the type of loan transaction requested.

**Section 1.03.3: Fair Lending Policy.** Employee agrees to strictly adhere to and ensure compliance with the provisions of the Fair Housing Act and Equal Credit Opportunity Act as summarized below, and any and all pertinent state or similar Requirements:

A.  The Fair Housing Act makes in unlawful to discriminate in housing related activities against any person because of certain characteristic, such as race, color, religion, national origin, sex, handicap, or familial status.

B.  The Equal Credit Opportunity Act prohibits discrimination with respect to any aspect of a credit transaction on the basis of certain characteristics, such as sex, race, color, religion, national origin, marital status, age (provided the borrower has the capacity to enter into a binding contract), receipt of public assistance, or because the borrower has in good faith exercised any right under the consumer Credit Protection Act.

InterLinc Mortgage Company fully supports the letter and the spirit of these laws and will not condone unlawful discrimination in any mortgage transaction.

**Section 1.03.4: Responsible Lending Statement.** Employee agrees to strictly adhere to and ensure compliance with the applicable Requirements, including Company Policies against predatory lending practices, more particularly, (a) steering a consumer who otherwise qualifies for a lower cost loan to a higher cost loan; (b) frequent refinancing with no appreciable benefit to the borrower; (c) charging excessive fees and points that strip equity; (d) undisclosed prepayment penalties; and (e) approving a loan without regard to the borrower's ability to repay the loan.

Employee acknowledges and accepts the Company's decision to not originate or purchase loans which are (a) loans subject to 12 CFR Par 226.31, 12 CFR Part 226.32 or 12 CFD Part 226.34 or Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, or (b) classified and/or defined as a "high cost", "covered", or "predatory" loan under any other state, federal or local law or regulation or ordinance, including, but not limited to, the States of Georgia or North Carolina, or the City of New York.

**Section 1.03.5: Zero Tolerance Fraud Policy.** All Company employees must have, and be seen to have the highest standards of honesty, propriety and integrity in the exercise of their duties. Employee agrees to strictly adhere to and ensure compliance with the provisions of the Company's Fraud Policy as summarized below, and any and all similar applicable Requirements:

Employee Initials: ___

A. Any submission, exclusion or misrepresentation of information pertaining to a loan application, or knowledge that inaccurate information has been submitted or information has been withheld from a loan application is a crime.

1) Submission of inaccurate information, includes, false statements on the loan application form and/or the falsification of documents purporting to substantiate information contained on the loan application, more specifically, applicant's identity, credit, employment, deposit and asset information, ownership/non-ownership and current occupancy or intended occupancy of real property as agreed to in the security instrument executed in connection with the loan transaction.

2) Exclusion of such information includes the failure to obtain, or divulge, or the lack of due diligence to obtain, or divulge all information required for the submission of a complete and accurate loan application.

B. Company expects its employees to report any concerns they may have without fear of prejudice or harassment. This applies to concerns relating to fraud, identity theft and any other such concerns.

C. Company will not tolerate fraud, impropriety or dishonesty and will take immediate action against any employee found to have defrauded, or attempted to defraud the Company.  The employee may be terminated and Company will refer the matter to and fully cooperate with any investigation conducted by a local, state or federal agency.

**Section 1.03.6: Expectations for Continued Employment.** Employee understands that Employee's continued employment are subject to the following:

A. Fulfillment of the performance standards established for Employee's Job Description;

B. Compliance with applicable agency guidelines and state and federal laws and regulations, and the other Requirements; and

C. Adherence to the Company Policies as determined by Company in Company's sole and absolute discretion.

**Section 1.03.7: Company Policies; General Compliance.** It is the Employee's responsibility to read, understand and adhere to all Company policies and procedures as published within the Company's SharePoint platform, Handbook, emails, or otherwise communicated to Employee ("Company Policies"). The Company Policies are effective as of the date of issuance, unless otherwise specified.  Employee further acknowledges that such Company Policies may be amended or modified during Employee's employment with Company. It is the Employee's responsibility to read, understand and adhere to any and all applicable federal, state and local laws, ordinances, rules, regulations, guidelines, handbooks, issuances, guides, and other requirements pertaining to the mortgage banking industry, to the business of Company, and to the origination, processing, underwriting, closing, or funding of mortgages, or other activities of Company, including the guidelines and requirements of the Consumer Financial Protection Bureau, United States Department of Housing and Urban Development, Department of Veterans Affairs, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association,

Employee Initials:

Government National Mortgage Association, United States Department of Agriculture, and all other applicable agencies, investors and insurers (altogether, the Company Policies and all such applicable laws, rules, regulations, guidelines and other requirements are referred to herein as the "Requirements").  Employee agrees to develop and maintain his/her knowledge and understanding of all such applicable Requirements.

**Section 1.04:  Meetings and Training**. Company requires Employee to attend all Employer and/or management scheduled meetings and trainings. Employee further agrees to make every effort to participate in all Employer sponsored events.

## SECTION 2: COMPENSATION.

For the services rendered by Employee, Employee shall be entitled to compensation as detailed within Addendum #2, attached hereto and made a part hereof. Employees are paid for compensation earned from the 1st to the 15th of each month on the 25th of the month.  Employees are paid for compensation earned from the 16th to the end of each month on the 10th of the following month.

## SECTION 3: RESTRICTIVE COVENANTS.

**Section 3.01:  Conflict of Interest**. "Conflict of Interest" is a situation in which a person has both a professional and personal interest in a business transaction.  Outside employment or contractor relationship(s), or any activities of Employee which are restricted by the Federal Housing Administration ("FHA"), as expressed within the FHA Handbook, or which adversely affect the quality or value of work performed by Employee, or which restrict Employee's availability of work time at Employer, are prohibited so long as Employee is an employee of Company.

**Section 3.01.1:  Examples of Conflict of Interest.**  Accordingly, by way of example and example only, employment or contractor relationships, or Employee actions, in the following fields or in the following manner, are prohibited while Employee is an employee of Company:

A. Having a personal interest in a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction, or a familial relationship with any party to either transaction, including, but not limited to borrower(s), seller(s), or real estate agency or agents;

B. Working or contracting for another Mortgage Lender or Mortgage Broker Company, Real Estate Broker, Escrow Company, Settlement Agency, Title Company/Agency, Appraisal Company, Credit Reporting Agency, Credit Bureau, Residential Home Builder, Credit Repair Business, Mortgage Marketing Company, or Tax Preparation Service;

C. Engaging in self-employment in direct or indirect competition with Employer;

D. Working for any company that uses or may use proprietary or confidential information of Employer;

E. Having a direct or indirect financial interest in or relationship with a competitor, customer or vendor, except for ownership of less than one percent (1%) of the issued and outstanding shares, in any class, of a publicly traded entity will not be considered a conflict; or

F. Using Employer assets or labor for personal use, without express approval of an authorized Company representative.

Employee Initials:

**Section 3.01.2: Notifying Employer of Conflict of Interest Pertaining to a Pending Mortgage Loan Transaction.** Employee must promptly notify Employer in writing of any Conflict of Interest pertaining to a pending mortgage loan transaction or simultaneous purchase and purchase-money mortgage loan transaction.  This written notice must be provided once Employee becomes aware of the conflict, but no later than the date on which the loan application is submitted for lock approval.   In the event of a conflict, Employee is expected to remove himself/herself from the transaction and notify the Company of any other similarly affected employee(s) involved in processing, underwriting or closing the transaction.

**Section 3.02:   Exclusive Efforts.** Unless Employee receives prior written approval from either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, Employee agrees during his/her employment with Company to: (a) devote his/her full work time, effort and attention to the business and affairs of the Company on an exclusive basis while employed by Company; (b) not engage in any other employment, or independent contractor relationship(s); and (c) not own or operate any business that provides residential mortgage lending services, or own or operate any mortgage-related business (such as credit counseling, processing and underwriting services), or have more than one percent (1%) ownership interest in ("Beneficial Interest") or control over, or  have any member of Employee's immediate family (e.g., spouse, parent or child) who has a Beneficial Interest in or control over any business that provides real estate settlement services as defined under the Real Estate Settlement Procedures Act, including, but not limited to title and closing services, survey or appraisal services, or real estate agent or brokerage services.

**Section  3.03:    Supervision and Authority.** Employee acknowledges and agrees that, as an employee of Company, he/she shall at all times be subject to the direction and control of Employer and its senior management.

**Section 3.03.1:  No Authority to Bind Company.** Employee further acknowledges and agrees that he/she has no right or authority to:

A. Make any contract or other commitment, including mortgage loan commitments for or on behalf of Company, or

B. Incur any obligation on behalf of Company, or create any liability, whether real, contingent, implied or apparent, in the name of the Company, except as specifically set forth, or as otherwise authorized in writing by either the Company's Manager and Chief Executive Officer or the President and Chief Operating Officer, or

C. Open, attempt to open, operate or attempt to operate any bank account in Company's name, or any trade name under which the Company may be doing business, or any similar name to one under which Company is doing business.

**Section 3.03.2: Receipt of Company Funds.** Employee further acknowledges that all payments remitted to Company, such as by check or by wire transfer, must be made payable to Company and directed to the appropriate department in accordance with Company Policies.  In the event Employee is unsure as to whom should receive the payment, or as to the current banking information for remittance by wire, Employee should immediately contact the Company's Chief Financial Officer for instructions.

## SECTION 4: TERMINATION OF EMPLOYMENT.

**Section 4.01:  Cooperation upon Termination.** During the periods immediately prior to and following Employee's termination of employment with Company, the Parties hereto shall cooperate fully in effecting an orderly transition of the business contemplated by this Agreement.

**Section 4.02:  Survival of Terms and Notice Following Termination.** All provisions of this Agreement, which by their nature should survive termination of the employment relationship shall survive termination of employment. Employee agrees to promptly notify Company's Human Resources Department with the name and address of his/her subsequent employer following termination from the Company.  Employee shall (and Employee grants Company the right to) provide a copy of this Agreement and/or any agreements containing post-employment restrictions to his/her subsequent employer as notification of the terms that survive termination of this Agreement.

## SECTION 5: GENERAL PROVISIONS.

**Section 5.01:  Notices.** Any notices given by Employer or Employee to the other under this Agreement shall be sufficient if in writing and if delivered personally or by mail, email, postage prepaid, or by express delivery to the other party's address appearing under "Notice Information" on page one of this Agreement. Employer shall provide notice of a change in its address for receipt of written notice by updating its contact information displayed on the "Contact Us" page of Company's website, https://interlincmortgage.com. Employee shall provide notice of a change of address for receipt of written notice by updating his/her contact information maintained within Employer's Human Resource Employment Information System. Notices delivered personally or by express delivery shall be deemed communicated as of the actual date of receipt; Notices delivered by mail shall be deemed communicated as of the date of mailing.

**Section 5.02:  Entire Agreement.** Employer and Employee understand and affirm that (a) this Agreement, and any and all other addenda, exhibits, schedules and attachments hereto, all of which are hereby incorporated herein, constitutes the entire agreement between Employer and Employee as to the subject matter addressed herein; (b) all prior or contemporaneous oral or written communications, understandings or agreements between the Employer and Employee with respect to such subject matter are hereby superseded and nullified in their entireties; and (c) the course of dealing between Parties will not be deemed to affect, modify, amend or discharge any provision or term of this Agreement.  Employer and Employee additionally affirm that no amendments, modifications, or waivers of this Agreement shall be valid or effective, unless made in writing and signed by both Employee and Employer.  Employer and Employee expressly acknowledge that confidentiality, restrictive covenants, and arbitration are addressed in separate agreements and address different subject matter from the present Agreement.

**Section 5.03:  Severability.** In the event that any portion of this Agreement is found by a court of competent jurisdiction to be unenforceable in any respect, then the unenforceable provision will be modified to the extent necessary to be enforceable and to, as reasonably possible, reflect the intent of the Parties as reflected in this notice and such adjudication shall not invalidate or render ineffective the balance of the provisions of this Agreement

**Section 5.04:  Certain Usage and Terminology.** In this Agreement, unless a clear, contrary intention is obvious from the context, (a) the words "herein," "hereof' and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section, addendum, schedule, exhibit, or attachment; (b) reference to a particular section, means such section hereof; (c) the

Employee Initials:

words "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term; (d) where any provision of this Agreement refers to actions taken by one party, such provision shall be construed to refer to actions taken directly or indirectly by such party; and (e) whenever the context requires, the singular shall include the plural and the masculine shall include the feminine.

**Section 5.05:  No Strict Construction**. Employer and Employee understand and affirm that this Agreement has been negotiated by the Parties at arms' length.  The language used in this Agreement shall be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against either Employer or Employee on the ground that such party is the drafter of the Agreement or any particular provision hereof.  The Parties further acknowledge and agree that the common law principals of construing ambiguities against the drafter shall have no application to this Agreement.

**Section 5.06:  Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument

**Section 5.07:  No Third-Party Beneficiaries**. This Agreement is not intended, and shall not be deemed, to confer upon or give rights to any person except as otherwise expressly provided herein.

**Section 5.08:  Assignment.** Employer may assign or otherwise transfer any of its interests in and to this Agreement by virtue of merger, consolidation, or other reorganization of Company. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Employer and be enforceable by the Employer and its respective successor(s) or permitted assigns.  This Agreement is personal to Employee and not transferable by Employee.

**Section 5.09:  Adequate Review.**  Employee acknowledges that, prior to signing, Company has granted Employee sufficient time to review the Agreement and agrees that the provisions set forth are reasonable.  Company has also encouraged Employee, prior to signing, to freely discuss the terms, the meaning and effect of the provisions of this Agreement with others, including a lawyer of Employee's choosing.

## SECTION 6: LAW GOVERNING AGREEMENT AND VENUE.

**Section 6.01:  Applicable Law and Venue.** This Agreement is entered into, and shall be governed by and construed in accordance with the laws of the State of Texas.  The parties have agreed pursuant to the Mutual Agreement to Arbitrate Claims that any dispute between them will be subject to final and binding arbitration.  To the extent any legal proceeding is filed ancillary to an arbitration, including actions to compel arbitration, confirm or vacate an arbitrator's award, or a petition seeking injunctive relief against a party, the parties agree that mandatory venue lies in the state and federal courts located in Harris County, Texas, and the parties expressly consent to personal jurisdiction of those courts. Notwithstanding the foregoing, a final judgment confirming an arbitrator's award may be enforced in other jurisdiction(s) by suit on the judgment or in any other manner provided by law.

**Section 6.03:  Attorney's Fees and Costs.** If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**Employee Initials:**

**EMPLOYEE**

May 29, 2020

Date

Employee Signature

Kenneth Springfield

Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Jun 1, 2020

Date

*Michelle Jabbour*

Michelle Jabbour (Jun 1, 2020 09:03 CDT)

By

Michelle Jabbour

Name

Human Resources Manager

Title

Employee Initials:



## EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION

This EMPLOYEE CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement") is entered into by and between the employee identified in the signature block below ("Employee") and InterLinc Mortgage Services, LLC by and on behalf of itself and any parent companies, successor companies, affiliated companies, and assigns (hereinafter referred to collectively as "Company").

### BENEFITS PROVIDED TO EMPLOYEE

Company will provide Employee with one or more of the following: (a) portions of the Company's Confidential Information (as defined herein) and updates thereto; (b) authorization to communicate with customers, potential customers, referral sources, and other business partners, and other assistance to help Employee develop goodwill for and on behalf of the Company; and/or (c) authorization to participate in specialized training related to Company's business.

### CONFIDENTIAL INFORMATION

#### A.   Confidential Information Defined

Employee acknowledges that the business of the Company is highly competitive and that the Company will provide Employee with access to its ever-changing Confidential Information relating to the business of the Company.  "Confidential Information" means any formula, pattern, device or compilation of information which is used in the Company's business, and which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.  Confidential Information includes, by way of example and without limitation, the following non-public information that Employee obtains or helps develop as a result of Employee's employment with Company:  the Company's trade secrets; information, data and records regarding customers, borrowers, referral sources, contractors, suppliers and vendors and the Company's dealings and agreements with those persons and entities; the Company's strategies, methods, operations, processes and procedures; books, records, manuals, handbooks and other documents created by or for the Company; details of the Company's training process; information concerning technical developments or advancements made by the Company, including, without limitation, any pending or potential patent applications and all research and development efforts and processes; the names of and other information concerning current and prospective investors and business affiliates; plans and strategies for expansion or acquisitions; budgets, financial data, history and forecasts, and pricing and profit margins; internal financial data and reports, including financial statements and records; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; business plans and strategies; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; training materials, methods and processes; organizational charts and organizational structure; labor costs and hours; employee compensation and performance data and other confidential personnel information;

payment amounts or rates paid to consultants or other service providers; and information obtained from any third party pursuant to an agreement to maintain the confidentiality of such information. Notwithstanding the foregoing, Confidential Information shall not include technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, and vendor lists developed or in use exclusively by, or under license issued to or in use exclusively by Employee prior to Employee's original hire date. Confidential Information, by definition, does not include any information that Company voluntarily makes available to the general public.

## B. *Company's Customer Records*

Employee acknowledges agrees that any and all books and records relating in any manner whatsoever to the business or customers of Company, as well as records pertaining to Employee's customers, which are obtained during the term of Employee's employment with Company (collectively, "Customer Records"), including but not limited to computer data and imaged documents, printed documents, literature, forms, manuals, records, lists, memoranda and other electronic, written or printed information, which in any way pertains to existing or former mortgage loans and/or existing or former mortgage loan applications, whether or not procured by Employee, shall be and are the permanent and exclusive property of Employer and for Employer's exclusive benefit; and that  unauthorized copying, dissemination or distribution of such records is strictly prohibited. Notwithstanding the foregoing, the term Customer Records shall not include (a) customer lists or contact databases maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee, or (b) Customer Records which, at the time of the disclosure, are part of the public domain through no act or omission by Employee, or (c) which are hereafter lawfully disclosed to Employee by a third party that did not acquire the information under an obligation of confidentiality to or through Company.

## C. *Employee's Acknowledgment*

Employee acknowledges that Confidential Information constitutes a valuable asset of the Company, which gives the Company the opportunity to obtain a competitive advantage over competitors.  Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.  Employee also may have access to Confidential Information of third parties, including, but not limited to, actual and potential customers, suppliers, partners, joint ventures, investors, and financing sources of the Company.  Employee agrees to treat this information in the same manner as Confidential Information of the Company.

## D. *Non-Disclosure of Confidential Information*

Employee agrees that Employee will not, at any time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information of the Company or third parties or make any use thereof, except as needed to carry out the Employee's employment responsibilities to the Company during the period of employment and then only as authorized and for the benefit of the Company.  Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information.  If Employee is not a supervisor or management employee, information Employee lawfully acquires about wages, hours, or other terms and conditions of employment will not be treated as or considered Confidential Information when

used for purposes protected by the National Labor Relations Act ("NLRA"). Under the NLRA, employees who are not in a supervisor or management role have a right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities.

## STEPS TO PROTECT INFORMATION

At all times, Employee agrees to use all reasonable and available methods to prevent the unauthorized use or disclosure of Confidential Information. Depending upon the circumstances, available methods may include but are not limited to: marking information "Confidential," sharing information with authorized persons only on a need-to-know basis, maintaining the integrity of password-protected computer systems, and otherwise storing information in a manner that prevents unauthorized access. Employee shall maintain at his or her work station and/or any other place under his or her control, only such Confidential Information as he or she has a current "need to know" in the furtherance of Company's businesses. Employee shall return to the appropriate person or location or otherwise properly dispose of Confidential Information once that need to know no longer exists. Employee shall not make copies of or otherwise reproduce Confidential Information unless the Company has a legitimate business need for such reproduction. Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, without the prior written consent of an Officer of the Company. If Employee does store electronic data on or in any electronic storage device, cloud storage account, personal email account or other web-based storage account that is not owned by the Company, with or without the consent of the Company, Employee hereby agrees not to copy or disclose such information to any third party and agrees not to use any such Confidential Information for Employee's own benefit or for the benefit of any third party, and further agrees that upon termination of Employee's employment for any reason, he/she will immediately surrender and/or provide access to any and all such electronic storage devices, cloud storage accounts, personal email accounts and other web-based storage accounts to the Company for inspection, data retrieval, and data removal. Employee further agrees to abide by any additional procedures instituted by the Company to identify and protect Confidential Information, which are considered by Company to be safeguards in addition to the protection provided by this Agreement. Nothing contained in those procedures or in this Agreement is intended to limit the effect of the other.

In the event disclosure of Confidential Information is required (a) pursuant to a court order, or (b) in connection with litigation proceedings involving Company, or (c) in connection with the Company's submission of reports or applications to be filed with a governmental agency. In such cases, Employee will not disclose Confidential Information until after the elapse of no less than thirty (30) days' prior written notice to and in consultation with Company's legal department. If 30 days' prior notice is not practicable, then such lesser time period as is reasonable under the circumstances.

Immediately upon termination of his or her employment with the Company and in no event later than five days after termination, or at any time upon earlier request by the Company, Employee agrees to deliver to the Company all Confidential Information which is in Employee's possession, custody or control, including, without limitation, memoranda, records, notes, plans, manuals, notebooks, documentation, program listings, flow charts, magnetic media, drives, disks, tapes, photographs and electronic files, and all other materials containing any Confidential Information irrespective of the location or form of such material, and specifically including all copies of such Confidential Information in whatever form. The

return of Confidential Information does not affect Employee's obligation to hold the Confidential Information in confidence at all times both during and after the termination of Employee's employment with the Company. Notwithstanding the foregoing, upon termination of the employment relationship, Employee shall be entitled to retain any customer lists or contact database(s) maintained exclusively by Employee, or maintained utilizing a software application under a license issued directly to and purchased by Employee ("Employee's Database"), including any public information pertaining to the individuals listed in Employee's Database, as well as the contact information for Employee's referral sources, including referral sources obtained during Employee's employment with Employer.

Employee further agrees to return to the Company, at the time of termination and in no event later than five days after the termination of his or her employment with the Company, all Company property in his or her possession (including, but not limited to, documents and media containing Confidential Information and Customer Records, cellular phones, computers or other computer equipment, external storage devices, office keys, access cards, credit cards, and all other tangible and intangible property of the Company), regardless of whether it meets the definition of Confidential Information above.

## OWNERSHIP OF PROPRIETARY WORKS

"Proprietary Works" refers to all: inventions, improvements, ideas, discoveries, business methods, and developments (whether patentable or not and whether reduced to practice or not); databases; mask works; product manufacturing guidelines; product design guidelines; product and service concept designs; original works of authorship, and other materials for which copyright protection may be obtained); trade secrets; and, any other forms of legally recognized intellectual property to which rights of private ownership or control can be held. Employee agrees that all inventions and other Proprietary Works which are conceived or made by Employee alone or with others, whether or not during usual business hours, in whole or in part during the period of Employee's employment by the Company, shall belong to the Company or its designee, unless specifically disclaimed by the Company in writing provided that such are related to Employee's work for the Company, were created or conceived with the assistance of Confidential Information or other property or resources of the Company, or are related in any manner to the Company's Business (actually engaged in or demonstrably anticipated at the time of termination of Employee's employment by the Company) (hereafter "Company Proprietary Works"). Employee agrees to promptly and fully disclose inventions and other Proprietary Works that are related to the Company's Business to the Company during employment and for one year thereafter.

Employee hereby fully and finally assigns, sells, transfers and releases to the Company or its designee all of his/her right, title and interest in and to all Company Proprietary Works (and derivatives therein and thereto), current and future; provided, however, that the agreement to assign inventions provided for herein shall be construed so as to comply with any limitations on the assignment of an invention that are required by applicable law in order for the agreement to be binding on Employee and not declared void.

Employee agrees that all Company Proprietary Works present and future are the sole property of the Company, and the Company is free to use them in any way, in its discretion. The rights assigned to Company under this Agreement are all legal rights of any kind or character, including (but not limited to) moral rights, mask work rights, sui generis database rights, and all other rights of ownership or control regarding the Company Proprietary Works throughout the world, present and future. The rights of the Company may be assigned, transferred, licensed, or sold, in whole or in part, subject to applicable law, without Employee's consent, upon such terms as may be determined by the Company, including without limitation to any successor in interest to the Company, successor in interest to any of the assets or business of the Company, or any third party.

At any time the Company (or its successor in interest) requests, either during Employee's employment or after termination thereof, and without charge, but at the Company's (or its successor's) expense, Employee agrees to execute, acknowledge and deliver all such further papers, including applications for patents, copyright registration, or other statutory protections, and to perform such other lawful acts as, in the opinion of the Company, may be necessary or appropriate to obtain or maintain patents, copyright rights, trademarks, registrations or statutory protections for Company Proprietary Works in any and all countries and to vest title thereto in the Company, its successors, assigns or nominees.

If despite this Agreement Employee retains ownership of any Proprietary Works that are incorporated into any product or service of the Company, Employee hereby grants Company a worldwide, irrevocable, royalty-free license to incorporate such Proprietary Works into the products and services of the Company (and its affiliates) at Company's discretion without any attribution or fee owed to Employee.  This Agreement supplements, and does not reduce or eliminate any rights Company would otherwise have in the work product of Employee under the "work for hire" doctrine, the U.S. Copyright Act, 17 U.S.C. §§ 101 - 810, or any other applicable laws.

Except for those items identified in Appendix A to this Agreement (if there are any), Employee is not an owner of any right, title or interest, nor is Employee the holder of any beneficial interest in, to or under any unpatented inventions, patent applications, patents, works in which a copyright right is claimed, applications for copyright registration, copyright registration, or trade secrets related to Company's line of business.

## NON-SOLICITATION OF CLIENTS OF COMPANY

In consideration of the benefits conferred by Company on Employee as set forth in Section 1 of this Agreement, Employee agrees that, during the period of Employee's employment with the Company and for a period of one (1) year after termination of Employee's employment with the Company for any reason (regardless of who initiates such termination), Employee will not in any way, directly or indirectly, for his/her own benefit,  or on behalf of another person or entity, call upon, solicit business or referrals from, or divert or attempt to divert business or referrals from any Company Client that Company did business with or was in negotiations to do business with in the twelve (12) months preceding termination of Employee's employment. As used in this Agreement, "Client" means any person or entity engaged in the business of providing home building services or real estate agent or brokerage services with whom Employee had dealings on behalf of Company, or about which Employee had access to Confidential Information.

## NON-SOLICITATION OF CUSTOMERS OF COMPANY

Employee hereby expressly covenants and agrees for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, call upon, solicit, or divert any borrower, applicant or potential applicant for a mortgage loan (collectively, "Customer") as identified within the  records contained within the Company's mortgage Loan Origination System ("LOS"), which records are accessible by Employee.  Employee expressly acknowledges that his/her access to Customer information in the Company's LOS constitutes his access to confidential information about that Customer justifying this restriction.  Notwithstanding the foregoing, an Employee whose termination is occasioned by Employee, or the mutual agreement of the Parties, and who provides a letter of resignation offering a minimum of two weeks' notice prior to his/her requested final day of employment, may, prior to the

termination date, submit to his/her Regional Manager a request for release from this Covenant for certain Customers contained in the LOS records in which Employee is the designated Loan Originator on (a) credit inquiries, defined as LOS records containing the potential applicant's name, social security/tax identification number and credit report, and (b) Loan Applications, which have not been locked and have not been submitted for preliminary underwriting.   The permission to solicit the Customer does not grant permission for Employee to remove or copy any Confidential Information or documentation contained within the Customer's LOS record or previously provided to the Employee in connection with Customer's process to obtain a mortgage loan.

## NON-SOLICITATION OF EMPLOYEES

Employee hereby expressly covenants and agrees that, at all times during Employee's employment by Employer and continuing for a period of one (1) year immediately following the termination of Employee's employment with Company, Employee, will not in any way, directly or indirectly, for his/her own benefit, or on behalf of another person or entity, unless express written permission is granted by Company's Manager and Chief Executive Officer or the President and Chief Operating Officer (a) call upon, solicit, divert, hire, or induce any "Subject Employee" of Company to terminate his/her employment relationship with Company, or (b) attempt to call upon, solicit, divert, hire, or induce any Subject Employee of Company to terminate his/her employment relationship with Company.   A "Subject Employee" is any current or former Company employee with whom Employee interacted in relation to performance of his duties for the Company or about whom Employee had access to Confidential Information during the last twelve (12) months of Employee's employment with the Company.   This provision shall apply whether Employee's termination is occasioned by Employer, Employee, or the mutual agreement of the Parties. Notwithstanding the foregoing, if Employee is hired for the title, position, duties and responsibilities of a "Branch Manager" or "Regional Manager" Employee may solicit and employ any InterLinc employee who worked in Employee's branch under the immediate supervision of Employee at the time of cessation of employment with Company. A "Sub-Branch Manager" is not a "Branch Manager" or "Regional Manager" for purposes of the foregoing sentence.

## EQUITABLE RELIEF

Employee and the Company agree that in the event of a breach or threatened breach by Employee of any covenant contained in Sections 2 through 7 of this Agreement, the Company will not have an adequate remedy at law.   Thus, in the event of such a breach or threatened breach, the Company will be entitled, upon posting of a bond not to exceed one hundred dollars ($100), to such equitable and injunctive relief as may be available to prevent and restrain Employee from breaching the provisions of any covenant contained in Sections 2 through 7.   The availability of injunctive relief will not prevent the Company from pursuing any other equitable or legal relief, including the recovery of damages from such breach or threatened breach.   If Employee fails to comply with a timed restriction in this Agreement, the time period for that restriction will be extended by one day for each day Employee is found to have violated the restriction, up to a maximum of one (1) year.   The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## AT-WILL EMPLOYMENT

The Company and Employee acknowledge and agree that Employee's employment is at-will.  Nothing in this Agreement alters the employment at-will relationship between the parties.

## GOVERNING LAW

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

## VENUE/FORUM

The exclusive venue and forum for any a proceeding to pursue emergency injunctive relief (including temporary restraining orders, and temporary or preliminary injunctions) to protect rights created by this Agreement will be a court of competent jurisdiction located in Harris County, Texas. Employee stipulates and consents to the personal jurisdiction of courts located in Harris County, Texas, over him or her for this limited purpose, and waives his or her right to objection to any such court's exercise of jurisdiction over him or her. The parties agree that nothing in this section is in conflict with, or waives rights under, the Mutual Agreement to Arbitrate Claims.

## INTERPRETATION

This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

## MODIFICATION

This Agreement may be amended only by an agreement in writing signed by Employee and the Company.

## WAIVER

The failure of either party to insist on the performance of any of the terms or conditions of this Agreement, or failure to enforce any of the provisions of this Agreement, shall not be construed as a waiver or a relinquishment of any such provision.  Any waiver or failure to enforce on any one occasion is effective only in that instance and the obligations of either party with respect of any provision in this Agreement shall continue in full force and effect.

## SEVERABILITY

Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction, the court shall modify such provision so as to be enforceable to the fullest extent permitted by applicable law.  If such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. **The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.**

## VOLUNTARY AGREEMENT

Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement.  Each party represents and agrees that such party has had the opportunity to review any and all aspects of this Agreement with the legal, tax or other advisors of such party's choice before executing this Agreement.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against Employee's heirs, beneficiaries and legal representatives.  It is agreed that the rights and obligations of Employee may not be delegated or assigned by Employee.  The Company may assign its rights and obligations under this Agreement and each assignee shall be deemed to have acquired all rights and assumed all obligations of the Company under this Agreement.  The Company's affiliates are intended third-party beneficiaries of this Agreement.  Moreover, if Employee becomes employed by a successor-in-interest or an affiliate, this Agreement will be deemed to have been assigned to the successor-in-interest or the affiliate upon the date Employee becomes so employed.

## COUNTERPARTS

This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original.  Any copies of any such signed counterparts may be used in lieu of the original for any purpose.

## DISCLOSURE OF EXISTENCE OF AGREEMENT

In order to preserve the Company's rights under this Agreement, the Company may advise any third party of the existence of this Agreement and of its terms, and the Company shall have no liability for doing so.

## COSTS AND ATTORNEYS' FEES

Employee agrees that, if the Company prevails in a legal proceeding to enforce this Agreement, the Company shall be entitled to recover, to the full extent allowed by law, its costs and fees incurred, including its attorneys' fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

## SURVIVAL

The obligations contained in this Agreement survive the termination, for any reason whatsoever, of Employee's employment with the Company (regardless of who initiates such termination) and shall thereafter remain in full force and effect as written.  The obligations contained in this Agreement also survive the promotion, transfer, demotion, and/or other change to the terms/conditions of Employee's employment, regardless of reason, and shall thereafter remain in full force and effect as written.

## NATURE OF AGREEMENT

This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings, if any, between the parties with respect to such matters.  This Agreement may be modified or amended only by an agreement in writing signed by both parties.  Employee's employment with the Company is and shall remain "at will" for all purposes.

## AGREEMENT LIMITATIONS

Nothing in this Agreement prohibits Employee from reporting an event that Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission or Department of Justice), requires Employee to notify or get permission from Company before doing so, or prohibits cooperating in an investigation conducted by such a government agency.   This may include a disclosure of trade secret information provided that it complies with  the Defend Trade Secrets Act of 2016 (DTSA).  The DTSA provides that (1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and, (2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document contain the trade secret under seal, and does not disclose the trade secret, except as permitted by court order.  The foregoing shall not be deemed to authorize or limit liability for an act by Employee that would otherwise be illegal absent this Agreement such as unlawful access of material by unauthorized means, or theft of Company property.

## AGREEMENT

**BY COMPLETING AND EXECUTING THIS AGREEMENT, LEGAL RIGHTS AND DUTIES ARE CREATED. EMPLOYEE IS HEREBY ADVISED TO CONSULT INDEPENDENT LEGAL COUNSEL AS TO ALL MATTERS CONTAINED IN THIS DOCUMENT.**

[SIGNATURE PAGE FOLLOWS]

May 29, 2020
_____
Date

_____
Employee Signature

Kenneth Springfield
_____
Printed Name

**INTERLINC MORTGAGE SERVICES, LLC**

Jun 1, 2020
_____
Date

_Michelle Jabbour_
_____
By

Michelle Jabbour
_____
Name

Human Resources Manager
_____
Title



# MUTUAL AGREEMENT TO ARBITRATE CLAIMS

The MUTUAL AGREEMENT TO ARBITRATE CLAIMS ("Agreement") is between You (identified in the signature block below and referred to in this Agreement as "You," "I," "Me", or "Employee") and InterLinc Mortgage Services, LLC and its present and future affiliates and subsidiaries (collectively referred to as "InterLinc"). All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court, jury trial, or any other adjudicatory proceeding**. The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.

## CLAIMS COVERED BY THE AGREEMENT

Except as it otherwise provides, InterLinc and I mutually consent to the resolution by arbitration of all claims or controversies, past, present or future, arising out of or related to my application and selection for employment, employment, termination of employment, and post-employment activities that InterLinc may have against Me or that I may have against any of the following:  (1) InterLinc, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) any of InterLinc's parent, subsidiary and affiliated entities, (4) InterLinc's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them. Any and all of the entities and individuals listed in the preceding sentence can enforce this Agreement.

This Agreement is intended to be applied as broadly as permitted by law, and applies, without limitation, to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation, or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, workers' compensation, military status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state statutes or regulations addressing the same or similar subject matters; and claims for violation of any federal, state, or local law, statute, regulation, or ordinance (except as provided below).

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, the preceding sentence does not apply to the Class Action Waiver below.

## CLAIMS NOT COVERED BY THE AGREEMENT

These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits (except that discrimination or retaliation claims based upon seeking such benefits claims are covered by the Agreement); and (ii) disputes that any applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement.

Nothing in this Agreement prevents Employee from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities and Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement.  This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency before bringing a claim in arbitration.

Both You and the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any applicable restrictive covenant(s) or confidentiality obligations between You and InterLinc. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction. All determinations of final  relief  will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

## CLASS AND COLLECTIVE ACTION WAIVERS

INTERLINC AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class and/or collective action to that extent must be litigated in a civil court of competent jurisdiction—not in arbitration—but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. The Arbitrator is nevertheless without authority to preside over a class or collective action.

Regardless of anything else in this Agreement and/or the AAA Rules (discussed below) or other applicable rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver, including, but not limited to any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## TIME LIMITS FOR COMMENCING ARBITRATION AND REQUIRED NOTICE OF ALL CLAIMS

InterLinc and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. I understand that the aggrieved party is encouraged

to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand.

Written notice to InterLinc, or its officers, directors, employees or agents, shall be sent to InterLinc Mortgage Services, LLC at InterLinc's then-current headquarters address, which currently is 10613 W. Sam Houston Pkwy. N., Ste. 200, Houston, TX 77064.  I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought.  The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## REPRESENTATION

Any party may be represented by an attorney or other representative selected by the party.

## DISCOVERY AND SUBPOENAS

Each party shall have the right to take depositions of three fact witnesses and any expert witness designated by another party.  Each party also shall have the right to make requests for production of documents to any party.  Requests for additional depositions or discovery may be made to the arbitrator selected pursuant to this Agreement (the "Arbitrator").  And the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on whether or not additional discovery is warranted under the circumstances of the case.  Each party shall also have the right to subpoena witnesses and documents to the extent allowed by law, subject to any limitations the Arbitrator shall impose for good cause shown.

## DESIGNATION OF WITNESSES

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

## PLACE OF ARBITRATION

The arbitration shall take place in the county (or comparable governmental unit) in which I am or was last employed by InterLinc.

## ARBITRATION PROCEDURES

The arbitration will be administered by the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".); provided however, if there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator shall be either a retired judge from any jurisdiction, or an attorney who is experienced in employment law or, if the claim is not based on employment, the law pertinent to the nature of the primary claim, and licensed to practice law in the state in which the arbitration is convened.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose (subject to all applicable preemption principles), or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without authority to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. Either party may file a motion to dismiss and/or a motion for summary judgment, and the Arbitrator shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense in the first instance, may arrange and pay for a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party upon its request shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in employment arbitrations, normally no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

## ARBITRATION FEES AND COSTS

InterLinc will be responsible for paying any filing fee and the fees and costs of the Arbitration Administrator and the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by InterLinc. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

## INTERSTATE COMMERCE

I understand and agree that InterLinc is engaged in transactions involving interstate commerce and that my employment is related to that interstate commerce.

## SURVIVAL OF AGREEMENT

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. This Agreement will be binding upon my heirs, executors, assigns, administrators, agents, and other legal representatives, and will be for the benefit of InterLinc, and its subsidiaries, affiliates, successors, and assigns.

## SOLE AND ENTIRE AGREEMENT

This is the complete agreement between the parties on the subject hereof.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Any contractual disclaimers InterLinc has in any handbooks, other agreements, or policies do not apply to this Agreement.

## CONSTRUCTION AND SEVERABILITY

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.  All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

## AGREEMENT

**I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS. BY SIGNING THIS AGREEMENT, INTERLINC AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY ATTORNEY AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISHED TO DO SO.**

| May 29, 2020 | |
| --- | --- |
| Date | Employee Signature |
| | Kenneth Springfield |
| | Printed Name |

**INTERLINC MORTGAGE SERVICES, LLC**

| Jun 1, 2020 | |
| --- | --- |
| Date | By |
| | Michelle Jabbour |
| | Name |
| | Human Resources Manager |
| | Title |